UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AUGUSTINE AVILA,

                    Petitioner,

vs.                                Case No.  2:06-cv-651-FtM-29DNF
                                   Case No.  2:04-cr-57-FtM-29DNF

UNITED STATES OF AMERICA,

                    Respondent.
_____

**OPINION AND ORDER**

        This matter comes before the Court on petitioner's Motion Pursuant to 28 U.S.C. § 2255 (Doc. #1)[1] and Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody (Doc. #7).  The United States filed a Response to each motion (Docs. ## 9, 10) and petitioner filed a Reply to Government's Response (Doc. #11).

**I.**

        Petitioner Augustin Avila's (petitioner or Avila) one-count Indictment (Cr. Doc. #1) charged that on or about April 30, 2004, petitioner possessed with intent to distribute fifty grams or more of a mixture or substance containing a detectable amount of cocaine base, also known as crack cocaine.  In due course petitioner plead

_____

[1]Docket numbers referring to the underlying criminal case are cited as (Cr. Doc.) and docket numbers referring to the civil case are cited as (Doc.).

guilty (Cr. Doc. #46) and was sentenced to imprisonment of 262 months (Cr. Doc. #52).

Petitioner filed a direct appeal, and the Eleventh Circuit upheld the conviction and sentence. (Cr. Doc. #91); United States v. Avila 189 Fed. Appx. 924 (11th Cir. 2006). Petitioner did not file a petition for a writ of certiorari with the Supreme Court, but filed a timely § 2255 motion. Because petitioner is proceeding *pro se*, the Court construes his § 2255 pleadings liberally.

## II.

Petitioner raises a jurisdictional issue which the Court will address first. Petitioner asserts that the Court lacked jurisdiction to impose an enhanced sentence under 21 U.S.C. § 851 because the government never filed a § 851 notice or information. Because of this, petitioner asserts his sentence under the "§ 851 Career Criminal Act" is not valid. Petitioner is both right and wrong.

Petitioner is correct that the government did not file a § 851 notice or information. The court record reflects no such filing, and the government concedes that it did not file such a notice. (Doc. #9, p. 3, ¶5.) Petitioner is therefore correct that the Court lacked the authority to impose an enhanced sentence under § 851.

Petitioner is incorrect when he asserts his sentence was imposed or enhanced under § 851. The sentence imposed by the Court

did not take § 851 into account in any fashion.  Rather, Petitioner was sentenced as a career offender under Sentencing Guidelines § 4B1.1.  Although petitioner treats career offender status and § 851 as being synonymous, they are different procedures.  While an information must be filed under § 851 if the government seeks to increase the statutory maximum sentence, it is well established that "the Government does not have to follow the notice requirements of section 851 in order to use a defendant's prior convictions to enhance his sentence under the Guidelines as a career offender, so long as the enhanced sentence still falls within the permissible statutory range." Young v. United States, 936 F.2d 533, 536 (11th Cir. 1991).  Here, the maximum statutory penalty was ten years to life imprisonment, and the 262 months was well within that statutory range.  Therefore, petitioner's jurisdictional issue is without merit.

Since § 851 was not involved in the sentence, there is also no merit to petitioner's assertions that his guilty plea was unknowing on this basis and his attorney ineffective for failing to explain the § 851 procedure or object to the failure to follow the § 851 procedure.  As discussed more fully below, petitioner's guilty plea fully satisfied the legal requirements and his attorney provided competent representation.

### III.

Petitioner also asserts that his guilty plea was invalid. Petitioner states that his understanding was that he would be

pleading guilty to a specific amount of cocaine base with a certain base offense level (50 grams with a 32 base offense level). Petitioner also asserts there was a verbal understanding or stipulation that his sentencing range would be 108 to 135 months imprisonment.   Petitioner states he did not know he would be adjudicated a career criminal, and this resulted in a more serious charge than was presented to him by his attorney or the government. Petitioner further asserts that he would not have pled guilty if he knew in advance that the district court was going to sentence him under the career offender provisions.  (Doc. #1, pp. 5-7.)

### A.

The legal principles are well-established.  "A guilty plea is more than a confession which admits that the accused did various acts.   It is an admission that he committed the crime charged against him.  By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." United States v. Broce, 488 U.S. 563, 570 (1989)(internal quotations and citations omitted).   For this reason, the United States Constitution requires that a guilty plea must be voluntary and defendant must make the related waivers knowingly, intelligently and with sufficient awareness of the relevant circumstances and likely consequences.  United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976).  After a criminal defendant

-4-

has plead guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003), cert. denied, 540 U.S. 1149 (2004), attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty.  United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

     To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea.  United States v. Brown, No. 05-16128, 2008 WL 1869727, ____ F.3d ___ (11th Cir. Apr. 29, 2008); United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005); United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999). Rule 11 explicitly directs the district judge not to accept a plea without determining these core concerns.  Therefore on review the Court is "warranted in regarding the court's acceptance of the plea as a positive finding on each [component of the Rule]."  United States v. Buckles, 843 F.2d 469, 472 (11th Cir. 1988), cert. denied, 490 U.S. 1099 (1989).  A petitioner "will rarely, if ever, be able to obtain relief for Rule 11 violations under § 2255," and

such relief is available "only in the most egregious cases." United States v. Dominguez-Benitez, 542 U.S. 74, 83 n. 9 (2004).

The guilty plea colloquy by the magistrate judge (Cr. Doc. #45) satisfied the requirements of Rule 11 and the three core concerns.  The extensive plea colloquy affirmatively refutes the belated claims of petitioner.

**B.**

At the change of plea hearing the magistrate judge personally addressed petitioner in open court.  (Cr. Doc. #45.)  An interpreter was utilized and placed under oath. (See id. at 3.) Petitioner first complained that he was not receiving medication or treatment for an injury, but stated that he wished to plead guilty. (See id. at 4-9.)  Petitioner was advised that the Court was required to find that his guilty plea was made freely and voluntarily and that there was a factual basis to support the guilty plea, and therefore he would be placed under oath and asked questions.  (See id. at 8-10.)  Petitioner was told that if he did not understand anything the Court said he should have the Court further explain; he was also advised that he could confer privately with his attorney at any time during the plea.  Petitioner was placed under oath, and was advised of his obligation to tell the truth and that false statements could be prosecuted for perjury. Petitioner said he understood.  Petitioner was also told that his testimony during the plea colloquy could be used against him in any proceedings in the case.  (See id. at 10.)

-6-

Petitioner answered some biographic questions, and stated he was not currently under the influence of any drugs, alcohol, or medication but had a drug problem that needed treatment and felt he needed treatment for his head injury. Petitioner said that he understood where he was, what he was doing, and the importance of the proceeding. (See id. at 13.)

Petitioner stated he knew he was being charged with drugs, and had enough time to discuss the charge in the indictment with his attorney. The interpreter read the Indictment to defendant in Spanish, and petitioner then conferred with his attorney. (See id. at 14-15.) The magistrate judge then explained the charge in the Indictment, and petitioner said he understood the charge. (See id. at 15-16.)

Petitioner stated he was satisfied with the way his attorney had represented him, and that he had no complaints either about what his attorney had done or what his attorney had not done. (See id. at 16.)

After petitioner said he pled guilty, he asked the magistrate judge what would happen if he did not plead guilty. (See id.) The magistrate judge explained that petitioner would go to trial, where the government would have to prove the allegations beyond a reasonable doubt, and that petitioner could be found guilty if a unanimous vote of the jury said so, or he could be found not guilty of the offense. Petitioner stated he understood this, and that he wished to plead guilty. Petitioner stated that no one had

threatened or coerced him in any way to get him to enter the plea, and that he was pleading guilty because he was guilty of the offense.  (<u>See id.</u> at 17.)  Both government counsel and defense counsel expressed their belief that petitioner was competent to go forward with the guilty plea.  (<u>See id.</u> at 17-18.)

When the magistrate judge asked for the original Plea Agreement, defense counsel stated that petitioner wanted to withdraw from the Plea Agreement and enter a guilty plea without the benefit of a plea agreement.  (<u>See id.</u> at 18-19.)  Defense counsel explained that this was being done in light of decisions of the United States Supreme Court regarding the sentencing guidelines.  (<u>See id.</u>)[2]  The magistrate judge inquired whether this was what petitioner wanted to do, and petitioner responded "that is fine."  (<u>Id.</u> at 19.)  The magistrate judge allowed petitioner to withdraw from the Plea Agreement and to plead guilty without a plea agreement.  (<u>See id.</u>)

Petitioner was advised of the penalty for the offense, and acknowledged that he understood the penalty.  The magistrate judge determined that petitioner had discussed with his attorney how the Sentencing Guidelines applied to his case, and that the sentencing court would take into account a number of considerations in determining the guideline range.  (<u>See id.</u> at 20.)  Petitioner

---

[2]The Plea Agreement had included a provision under which petitioner would agree to waive his right to appeal most Sentencing Guidelines issues.  (Cr. Doc. #21, p. 9.)

stated that he understood that his criminal history is a very important factor in applying the Sentencing Guidelines, and that at the time of the guilty plea no one knew where petitioner would fall in the Sentencing Guidelines because a pre-sentence report had not been completed and there had been no opportunity yet for objections. (See id. at 20-21.) After explaining that the sentencing court would resolve any disputes, the magistrate judge told petitioner that even his attorney does not know where he would fall in the guidelines or how the guidelines will apply to him. (See id. at 21-22.) Petitioner said he understood this. (See id. at 22.) The magistrate judge also advised petitioner that he would not be allowed to withdraw his guilty plea on the grounds that his attorney may have incorrectly told petitioner where he thinks petitioner would fall in the guidelines, which petitioner said he understood. (See id. at 22-23.) The magistrate judge then explained in more detail the role of the Sentencing Guidelines in relation to the statutory maximum, which petitioner said he understood. (See id. at 23-25.) Petitioner stated that he understood the possible penalties he was facing. (See id. at 27.)

Petitioner was then advised of the following rights by the Court: He was presumed innocent; the burden of proof was upon the United States; the burden of proof was beyond a reasonable doubt; he had the right to plead not guilty and could persist in his not guilty plea; he had the right to a speedy trial; he had the right to a jury trial; he had the right to the effective assistance of an

attorney at trial and at every stage of the criminal proceedings; he had the right to cross examine the witnesses against him; he had the right to present witnesses in his own defense; he had the right to compulsory process to obtain witnesses; he did not have to make any statement about the charges; he could not be compelled to incriminate himself; he could not be compelled to testify unless he wanted to testify; and if tried by a jury, all jurors must unanimously agree on his guilt before he could be convicted. Petitioner said he fully understood those rights. (Cr. Doc. #45, pp. 28-29.) Petitioner was then told that by pleading guilty he would waive and give up his rights, any defenses he may have, and the right to challenge the government's evidence (See id. at 29-31.)

The magistrate judge explained to petitioner that "in order for you to be found guilty of the offense that's alleged in the indictment, the government would have to prove that you knowingly and willfully possessed cocaine base, crack cocaine, that you possessed the substance with the intent to distribute it, and that the weight of the cocaine base crack cocaine was in excess of 50 grams." (Id. at 32.) Petitioner said he understood this. (See id.)

The government attorney then proffered the facts he would prove if the case went to trial (Cr. Doc. #45, pp. 33-36), which included that law enforcement officers executed a search warrant and found 202 net grams of cocaine base crack cocaine (463 pieces)

hidden under the floor, and that petitioner stated in a post-Miranda interview that he had been selling crack cocaine from his residence for about one year, purchased about 300 pieces of crack cocaine each week, had received about 300 pieces of crack cocaine the night before, kept it hidden under the floor where the officers had found it, and that all the crack was his.  Petitioner stated he understood the government's proffer.  (See id. at 36.)

When asked to state in his own words what he had done, petitioner explained that  he would buy crack cocaine from a black guy every week or every other week, and would then sell it; that he remembered the execution of the search warrant and that the officers found the "rocks;" he believed he had 250 rocks, but was told the officers found 450 rocks; petitioner could not confirm the 463 pieces because they were not counted by the officers in his presence; and that 250 pieces would be less than 50 grams.  (Cr. Doc. #45, pp. 36-39.)  The magistrate judge advised petitioner not to plead guilty if he truly believed he had less than 50 grams, and petitioner repeatedly insisted he had 250 rocks, not the 463 counted by the officers.  (See id. at 39-41.)  Petitioner said he did not know if he had more than 50 grams, but knew he had 250 pieces.  (See id. at 41.)  Defense counsel advised the magistrate judge that he had extensive discussions with petitioner, who always maintained he had 250 pieces; counsel further agreed the evidence that 463 pieces weighed 202 grams allowed the court to find that 250 pieces weighed more than 50 grams.  (See id. at 41-42.)  The

prosecutor stated that an amount in excess of 50 grams was an element of the offense, that the lab report established that the net weight was 202 grams, and that the number of pieces was not material. (<u>See id.</u> at 42-43.) Petitioner again stated he had 250 pieces, and that he did not know whether that was more than 50 grams. (<u>See id.</u> at 43-44.) The magistrate judge then had petitioner identify a photograph produced in discovery as being his cocaine base that was seized by the officers from his hiding place under the floor, still insisting there were only 250 pieces. (<u>See id.</u> at 45-49.) Petitioner said he wanted to plead guilty as charged to 50 grams or more. (<u>See id.</u> at 49-50.) The magistrate judge found that petitioner's decision to plead guilty was freely, knowingly, intelligently and voluntarily made and was not the result of any threats or promises. (<u>See id.</u> at 53.)

**C.**

The record affirmatively refutes petitioners claims that he believed he would be pleading guilty to 50 grams of cocaine base with a base offense level of 32, and that there was a verbal understanding or stipulation that his sentencing range would be 108 to 135 months imprisonment. "[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong

presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Despite the lengthy discussion concerning whether there was more than 250 rocks, nothing suggested that petitioner was told he would only be held accountable for 50 grams or that his base offense level would be 32.  Indeed, the record consistently reflects that petitioner was told the charge and proof involved more than 50 grams, that even 250 rocks was more than 50 grams, and that no one knew what his Sentencing Guidelines calculation would be. Additionally, whether the base offense level was 32 or 34 did not affect the sentence because petitioner's career offender status made the base offense level 34 in any event.

Petitioner was not specifically told that he could be eligible for career offender treatment under the Sentencing Guidelines, but was told that his criminal history was very important under the Sentencing Guidelines.  The law is now clear that petitioner did not have to be informed that he could be adjudicated a career criminal in order for the guilty plea to be valid.  Brown, 2008 WL 1869727 at *10.

In his Reply, petitioner suggests that he had received medication which included pain relievers, and therefore does not believe the government attorney or his attorney discussed § 851 or the career offender enhancement under § 4B1.1.  (Doc. #11, pp. 1-

2.)  At the March 1, 2005 change of plea hearing the magistrate judge had a lengthy discussion with petitioner during which petitioner asserted he had <u>not</u> received his medication.  Petitioner stated that he wanted to plead guilty but to have something done about the injury he incurred when he fell out of the U.S. Marshal's van.  (Cr. Doc. #45, pp. 3-9.)

### IV.

Petitioner asserts that his attorney provided ineffective assistance.  (Docs. ## 1, p. 6; 7, p. 5.)  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his counsel rendered ineffective assistance. Petitioner must establish (1) that his counsel's representation was deficient, i.e., fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced petitioner, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  <u>Strickland</u>, 466 U.S. at 687-88.  <u>See also</u> <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005); <u>Lawhorn v. Allen</u>, 519 F.3d 1272, 1293-97 (11th Cir. 2008). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000)(quoting <u>Strickland</u>, 466 U.S. at 690).  This judicial scrutiny is "highly deferential."  <u>Id.</u>  A court must adhere to a strong presumption

-14-

that counsel's conduct falls within the wide range of reasonable professional assistance.  <u>Strickland</u>, 466 U.S. at 689-90.  Issues of ineffective assistance of counsel can be raised in a § 2255 proceeding even where petitioner could have raised the issues on direct appeal but failed to do so.  <u>Massaro v. United States</u>, 538 U.S. 500 (2003).

Petitioner asserts that his attorney provided ineffective assistance of counsel by failing to insist on a written plea agreement.  The record reflect that in the original Plea Agreement (Cr. Doc. #21) petitioner waived his right to challenge his sentence on most grounds, including Sentencing Guidelines issues. Pleading guilty without a plea agreement allowed petitioner to raise any challenge to the sentence authorized by law.  This was a reasonable choice by counsel.  The Court would not have agreed to a conditional guilty plea or a stay of proceedings to see whether the law changed in petitioner's favor.

Petitioner asserts in his Reply (Doc. #11, pp. 2-4) that counsel was ineffective by stipulation that his prior convictions qualified under the career offender provision.  Petitioner asserts that the government had to prove the prior convictions beyond a reasonable doubt as to whether they were applicable to trigger the requirements of § 4B1.1.  Petitioner asserts that counsel should have objected to the use of the prior convictions, but instead did not present any defense to the use of the prior convictions.

-15-

It is clear that counsel did not provide ineffective
assistance in connection with the prior convictions. The
government need not prove petitioner's eligibility for career
offender enhancement beyond a reasonable doubt. Rather, a
preponderance of the evidence is all that is required. United
States v. Spell, 44 F.3d 936, 938 (11th Cir. 1995). Additionally,
it is well established that a federal criminal defendant cannot
challenge his prior convictions which are used to enhance his
sentence except for a conviction obtained in violation of the right
to counsel. Custis v. United States, 511 U.S. 485 (1994).
Petitioner does not make, and has never made, such a claim. It is
also clear that petitioner may not utilize the § 2255 proceeding to
challenge any of these prior convictions except for a violation of
right to counsel. Daniels v. United States, 532 U.S. 374 (2001);
McCarthy v. United States, 320 F.3d 1230 (11th Cir. 2003). Since
no right to counsel claim is asserted, the validity of the prior
convictions can not be challenged in this § 2255 proceeding. The
Eleventh Circuit has determined that petitioner was properly found
to be qualified as a career offender. Avila, 189 Fed. Appx. at
926.

Accordingly, it is now

**ORDERED:**

1. Petitioner's Motion Pursuant to 28 U.S.C. § 2255 (Doc.
#1) and Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or

Correct Sentence By a Person in Federal Custody (Doc. #7) are **DENIED**.

2.    The Clerk of the Court shall enter judgment in the civil case and close the civil file.  The Clerk is further directed to file a copy of the judgment in the criminal file, Case No. 2:04-cr-57.

**DONE AND ORDERED** at Fort Myers, Florida, this __30th__ day of May, 2008.

JOHN E. STEELE
United States District Judge


Copies:
AUSA Casas
Augustin Avila